Good morning, Your Honors. May it please the Court, my name is Skye Langs, Pro Bono Counsel for David Litmon, Jr. At this point, I would like to reserve two minutes for rebuttal, and I will keep track of my time. Can you pull that microphone a little closer to your mouth? Yes. This case is about drawing the line between permissible civil regulations and unconstitutional restraints on individual liberty. Lifetime in-person registration every 90 days is an unconstitutional restraint because it violates two main constitutional protections. First, substantive due process, and second, equal protection. And for those reasons, as well as the other reasons briefed in this case, this Court should reverse the District Court's dismissal of Mr. Litmon's claims. Turning to the first main constitutional violation of substantive due process, lifetime in-person registration every 90 days infringes on the fundamental right to be free from physical restraint. Contrary to the Attorney General's ---- I understand from your brief, and correct me if I'm wrong, that the key aspect of the registration here is the fact that this is to be done in person. Yes, Your Honor. And you don't make a claim that simply lifetime registration violates the Constitution. It is the fact that he has to go in that puts it over the edge, so to speak. It's the combination, Your Honor. It's the lifetime, it's the in-person, and it's the every 90 days, because as Your Honor is probably aware, this Court has upheld an annual in-person registration. And Mr. Litmon is not arguing that that is unconstitutional, but rather that requiring in-person registration every 90 days for the life of the offender, that crosses the line and becomes an unconstitutional restraint on individual liberty. Those were twice a year instead of every 90 days. Your Honor, this Court should draw the line at annual registration. No other form of civil regulation places as great of a burden on otherwise free citizens. Why is that such a burden? He has to go in and fill out a form. It takes about a minute or two. Your Honor, cases arising in the context of habeas corpus have found that a frequent appearance requirement amounts to a form of custody. And this Court should look to that precedent, and in fact, it makes sense to do so, because registration most closely resembles conditions of parole or supervised release, which courts have found restrain individual liberty. It doesn't matter how long it takes to register. The fact that he has to go in, in person, every 90 days limits his ability to do what otherwise free citizens can do with their lives and with their time. But he's not an ordinary free citizen. He's a violent sexual predator. Your Honor, he is. There are some downsides to that. Yes, Your Honor. However, he's no longer incarcerated. He's no longer under institutional supervision. So is the State limited to keeping him locked up all the time or nothing? No, Your Honor. Annual in-person registration is permissible. Mr. Lippman can register annually, and the State can still keep track of his whereabouts. And it serves the same purpose as 90-day registration in that it enables citizens to know where sex offenders live and it enables law enforcement to keep track of these offenders. To the extent that registration is effective. Well, in-person registration has, from the point of view of the State, has advantages over remote registration, either online or by letter or whatever. For one thing, there's no doubt, in fact, that he's doing the registering. You know, it's not being done for him by somebody else. It also acquaints local law enforcement with what he looks like. Right? Yes. And it also brings him face-to-face with the police, which perhaps reinforces, I think like he's maybe thought to reinforce, the risk of being a syphilis. So all of those are tangible advantages that the State could claim by in-person registration. Yes, Your Honor, but those advantages are served equally well by annual registration as quarterly registration. Well, not so much. I mean, let's take the last thing. If keeping him aware of the fact that the police is watching him, sort of bringing it home to him, happens once a year, you sort of forget six months later. But maybe if you have to do it every 90 days, you know, you have to walk into a police station, face the police, deal with this. I mean, the State could reasonably think that that would be more likely to deter recidivism than doing it yearly, right? Yes, Your Honor. However, because this infringes on a fundamental right to be free from physical restraint. I'm sorry. I'm sorry. I should have completed my thought or my question there. Doesn't this show that it's not purely punitive? I mean, it has a regulatory component, you might say, a regulatory or functional component. We're not just doing it to or maybe we're not doing it at all. We, I mean, we, the State of California, is not doing it to make him, you know, to punish him. They're doing it for functional reasons. And doesn't this sort of take it entirely out of the category of constitutional claims you're raising? No, Your Honor, because regardless of whether it's punitive or regulatory, it still infringes on this fundamental right to be free from physical restraint and should be reviewed under strict scrutiny, upheld only if it is narrowly tailored to achieve a compelling government purpose. Here it's not narrowly tailored because to the extent that registration is effective, there is no evidence that more frequent registration prevents future sex offenses. How would the State establish that? It sort of makes some common sense to me. But, you know, it's just me maybe. I don't know that having to walk in every 90 days to the police station and, you know, have a physical interaction with police would be more of a deterrent than doing it every year or so or doing it by mail or doing it online. I don't know. To me, it just strikes me as plausible. But how would the State go about proving something like that? Your Honor, long-term studies would be useful, even short-term studies, tracking offenders, tracking their reoffense, tracking whether or not all civilly committed. But if it's unconstitutional, they can't track it because they can't implement it, right? It's a little chicken and egg problem. You know, you can't try it out because it's unconstitutional because you haven't got the proof to show that it works, but you can't prove that it works because you can't implement it. I was thinking more, Your Honor, of police records and conviction records and things that happen as a result of reoffense. If there was some evidence that some types of sex offenders were more likely to reoffend. Well, but there's a finding in this case. This is not – I mean, he does not become a sexual – Sexually violent predator. Sexually violent predator. A sexually violent predator without a finding that he is likely to reoffend. It's not simply about what he's done in the past, but he's had a proceeding where there's been a finding, which you're not now challenging, or maybe can challenge, that he is likely to reoffend. Your Honor, to a certain extent, that speaks to Mr. Lippman's equal protection claim. Here, a sex – the legislature has determined that all sex offenders are likely to reoffend, and that's why they have to register it all. In addition, to the extent that the Attorney General argues – But aren't there – aren't there degrees of likelihood? No, Your Honor. There's not just a legislative finding here. There was a finding as to him. He went through the civil commitment process. So it's not simply that all sex offenders may have this identified proclivity that the legislature thinks. He was specifically found, I think, by a jury to have that proclivity. Yes, Your Honor. It would be illustrative at this point to look at the difference between a mentally disordered offender and a sexually violent predator, both of which have been civilly committed, both of which have committed violent sex offenses, and both of which have been found by a jury to pose a danger to society. For example, a child molester who has a mental disorder and has been found likely to reoffend could be civilly committed by a jury finding as either a sexually violent predator or a mentally disordered offender. However, as a sexually violent predator, he would have to register every 90 days. And as a mentally disordered offender, he would only have to register annually, despite the fact that they are equally likely to reoffend and pose a danger to society. Well, is that right? Isn't there a different standard for the mentally – what do they call it – the mentally disordered sex offender? They're not the same. They are the same in purpose and the same in effect. Well, but I mean, the standard is one is merely found to be predisposed, but the sexually violent predators are believed to actually going to commit another offense. Not exactly, Your Honor. The mentally disordered sex offenders, which that statute was repealed in 1981, those are found predisposed to commit future sex offenses. A – I see that my time is up. Would you like me to finish? Okay. A sexually violent predator has been found to pose a substantial – pardon me – is likely to – poses a danger to the health and harm of society in that they are likely to commit a future sexual offense. Well, how do we slice it? There are different standards for the two categories. There are different standards, but the consequences are the same. Well, they're different in another way. Your client was found to have committed a violent felony. He's likely to commit another violent sexual felony. Yes, Your Honor. Whereas the other category simply involves sexual offenses. And as we know, I mean, in some sense perhaps all sexual offenses have an element of coercion or – arguably. But there is a category of people who are violently sexual as opposed to people who perhaps, you know, statutory rape or, you know, something that is not inherently violent. Wouldn't – isn't there a finding of actual violence in your client's case, a likelihood that he will commit another violent sexual offense? Yes, Your Honor. However, mentally disordered – Doesn't that blow your equal protection argument out of the water? No, Your Honor. Because all mentally disordered offenders, the predicate sex offenses for mentally disordered offenders are all sexually violent, either inherently or statutorily defined as such. In addition, the mentally disordered offenders are found to pose a substantial danger of physical harm to others through presumably the recommission of a sex offense. If that sex offense is causing physical harm to others, it must necessarily be violent. So even though the language used to describe the level of dangerousness and the type of – But your client is found likely to commit another violent sexual offense. Yes, Your Honor. And a mentally disordered offender would be found likely to commit another offense that would cause physical harm to others. And where they've committed a sex offense, the presumption is that they are going to commit a future sex offense. So when you put all that together, the consequence is that a mentally disordered offender is as likely as a sexually violent predator to commit a future violent sex offense. And for that reason, there's no valid reason to differentiate. Thank you. Thank you. We'll hear from the State. Good morning. May it please the Court. Nelson Richards for Kamala Harris. Is there any reason why this has to take four to six hours, as plaintiff alleges? I mean, I think as one of my colleagues in this room has asked, you know, it's just a matter of time. It's a matter of filling out the form and turning it over to the police. Is there any reason why these things take as much as half a day, as plaintiff alleges? No, Your Honor. There's no reason why this process should take four to ten hours. Is there a possibility that was going on? Is this an attempt to harass the defendant by making it difficult for him to go through the process? That may be the case, and that is a possibility. However, if that were the case, the proper defendant would be the local law enforcement agency, and Mr. Lippman may have an as-applied challenge to the statute or to the registration form. He wouldn't have a facial challenge to the form or the sex offender. I see. So there's no as-applied challenge here. I had sort of understood it to be both, but maybe I'm mistaken about that. Well, I think he's ‑‑ depends on which claim you're speaking about or you're referring to. I think with his vagueness claim. Well, his substantive due process claim, as I understand it, pivots on the fact that he has to go in, and, I mean, he complains about going in. So, you know, he can't be a long‑term drug driver, a long‑haul drug driver because he has to be physically there. But he also complains not only does he have to go in, but he can't sort of make an appointment to do it at 8 in the morning and then go to work, you know, be out by 8, 10, you know, go to work. He goes in, and he's forced to wait and wait for no apparent reason. I thought that was his claim. That was part of his substantive due process claim. I'm just wondering. I mean, it just seemed a little strange to me that, I mean, you would agree, would you not, that if he were required to spend six hours a day once a week for the rest of his life in the police station, that that would raise serious substantive due process issues, don't you think? And particularly if there were not something that's ‑‑ I mean, there's some tests, you know, something that would take that long is one thing, but if it's just as a police sitting there making him wait for no reason related to his situation, that begins to sound a lot like punishment, doesn't it? It does, Your Honor, and there might be a claim there again, but the statute and the registration form are not designed to require him to do that. They're designed to have him provide the information that's necessary to provide both law enforcement and the community with information about Mr. Lippman, his address, his place of work, and his physical appearance. That does not ‑‑ there's nothing inherent about that that takes four to six hours, and if that's what local law enforcement is doing, then, again, he may have a claim against local law enforcement, either in state court under some form of mandamus or in federal court as a constitutional challenge. But that's not how he's chosen to frame his suit. He was told repeatedly below that he may have a claim against local law enforcement, and if his allegations or if his suggestions about what's going on at local law enforcement are accurate, he indeed may have a claim. But that's not the type of claim that would invalidate a statute on substantive process. I think his claim is that the State has implemented the procedure and they force him to go through this procedure, which exposes him to essentially the mercy of local law enforcement officers. There's nothing to regulate their conduct or to require them to deal with this in an expeditious manner, but essentially he and everyone in his position is subject to the mercy of law enforcement officers. And I think that's his claim. The claim is that if you're going to have a procedure like that for the State, you had better make sure that it is implemented in a way that doesn't cause unnecessary essentially loss of his liberty, where law enforcement is given sort of a lease on his life every 90 days for as long as they feel like keeping him there. Well, Your Honor. That sounds far from trivial to me. Your Honor, all regulations in statute to an extent rely on the discretion enforcement decisions of the State. Some do, some don't. You know, have you ever listened to our immigration cases? No, Your Honor. No, there's not. Lots of discretion is constrained or, you know, you know a little bit about tax law. You must file tax returns just like we all do. Yes. You know, they can be very picky. Those regulations can be very picky and very precise. And we are dealing here with somebody's life and something that they have to give up every 90 days, part of their existence. Why doesn't the State have a responsibility to make sure that those local law enforcement people deal with this in an expeditious manner? You represent the Attorney General, right? You're a Deputy Attorney General? Yes. Any directive out from General Harris about how law enforcement officials dealing with this are supposed to handle these matters, how they're supposed to treat people who come to register? I mean, this is not designed to embarrass or humiliate people, as I understand it. I mean, I understand what they did is awful. What this Petitioner did, I mean, I've read the record here. It's terrible. But he's paid for his crime by, you know, in prison, and he's now subject to regulation, which may be perfectly fine. But he's not subject to humiliation, and he's not subject to having his life wasted every 90 days whenever local officials feel like taking away part of his liberty. That's correct, Your Honor. This statute and the accompanying form are not designed to humiliate or punish Mr. Littman. They're designed to serve the legitimate State interest of protecting the public from extremely dangerous crime. But are they constrained in a way that they cannot be used in that way by local law enforcement? We have a claim here that at least in Mr. Littman's case, local law enforcement authorities are abusing this practice. And I would think that General Harris, who I understand is a, you know, I don't know her personally, but I understand is somebody committed to justice and liberty, would be concerned about this and, you know, would do something about it and make sure that that statute is not misused that way by law enforcement. Well, has it been established that you go to the police station, it takes six hours to do this, or is that just an argument or an allegation? It's unclear. It was not an allegation in any of his complaints. It's something that Mr. Littman raised during one of the hearings on the motion to dismiss. It's not in the second minute complaint, is it? No, I don't believe it's in any of the complaints, Your Honor. Again, it was something that Mr. Littman brought up during the hearing. So you're right. It's not – it doesn't take the form of an allegation. You know, we've accepted that allegation is true for purposes of this appeal. Which is why I'm asking you, because you didn't challenge it. And, you know, you've accepted the Fort Worth's appeal. So since you have, you're sort of stuck answering questions about it, some of them embarrassing. Well, Your Honor, again, I think, again, if these allegations are true, he may have – Well, you've accepted them for purposes of appeals. There's no if about it. They are true for purposes of this appeal. Yes. So we're going to sort of treat them as true. Yes. So treating them as true, he may have a claim either under mandamus or a 1983 claim against local law enforcement. Now, General Harris doesn't want that happening, does she?  You'll talk to her about it, won't you? I'll do my best, Your Honor. Well, tell her what the scheduling says for General Harris. If I'm asking you to talk to her about it, this is an issue. And if it's a problem, she should be aware of it. Like I said, Your Honor, I'll – Just use my name. Judge Kaczynski, I'll – You know who I am, right? Yes, I do. There we go. Just, you know, use it as a get-in to the office free card, you know? Like I said, Judge Kaczynski, I can use my best efforts to inform her about that. But as we've said, again – Let me ask you this more fundamentally. If this were established as true, that he has to spend six hours every 90 days, would that raise a substantive due process or ex post facto or whatever these other – No, Your Honor. He raises a variety of claims. No, Your Honor. It wouldn't raise a substantive due process claim because substantive due process claims, you have to have a fundamental right. And fundamental rights are those rights that are so deeply rooted in our tradition and history that they're subject to protection by the – It's reality. Isn't that sort of like saying you're going to spend six hours in jail every 90 days? You have to go down to the police station, and let's say it really were established that you've got to spend six hours down there, and you can't move. You know, you can't leave. Why isn't that the most fundamental of personal interests? And that is – well, I guess life is more fundamental. But, you know, liberty is right next to it. Why wouldn't this be a liberty interest? It may well be, but I'm not aware of any cases – I see that I'm out of time, Your Honor. Oh, no, you're not. You're out of time when we say you are. Mr. – Mr., let me decide. No cases where a court has recognized a liberty interest in that nature. All the cases that have been cited deal with institutionalization. I'm sorry. You mean going in? Let's say they said you come down to the police station, and you're going to spend six hours behind bars.  And you think it makes a difference whether you say you're going to be on this side of the bars or on that side of the bars, so long as you can't leave the police station? I think the extent to which someone is liberty deprived determines whether it's a fundamental right or not. And, again, all the cases that have been cited in the briefs dealing with fundamental liberty interests deal with incarceration or institutionalization over a long period of time. And, again, it's hard to say, based on this case without having additional case law, whether a six hours every 90 days in a police station would rise to the level of being a fundamental right. That's not to say that it wouldn't implicate other constitutional issues. There may be an ex post facto claim there. If there were no legitimate reason to require the offender to wait that amount of time, or if there was a showing or Mr. Levin could establish that were done for purposes of punishment, then there might be another type of constitutional claim. But that's not what's happening here. What's happening here is he's required to go in and fill out the form, and there's no indication of why he's having to wait. You know, if there were a backlog, that might not rise to the level of constitutional problems, whereas if the law enforcement were forcing him to sit there to punish him or to humiliate him, that may well raise a claim. But there are no allegations as to why these – why the wait's going on, what the source of the waits are, and those would definitely affect the constitutional analysis. So in your view, if we were to affirm the district court, this would not foreclose or collaterally stop him from raising an as-applied claim. Is that right? With – yes, Your Honor. With raising an as-applied claim to – as to the – as local law enforcement, a local 1983 claim or potentially mandamus claim, again, depending on the reasons and the – and why he's being forced to wait. A simple yes or no will do, because, you know, this is recorded, and the State will be held by whatever representation you make. Yes, and the answer is that – So in your view, if you were to bring a claim as applied, would the State or the – its conclusion claim or anything else based on the judgment in this case? The – we don't believe that the – the instrumentality is that the local departments would not know whether he tried to bring that type of claim. It would depend on the claim, wouldn't it? Wouldn't it depend on the claim?  It would depend on – yes, Judge Silberman, it would depend on the claim and how he framed it. What does that mean? I just agree with Judge Silberman it's not enough. Well, I don't know. I'm satisfied with it. Well, again, I mean, I'm not – You have to – you have to actually explain to me what it is that you mean by saying yes, Judge Silberman. What do you mean by that? What difference does it make if the claim is, as the statute is applied to me, they make me spend 6 hours every 90 days. Would that claim be precluded by – by an affirmance in this case? Yes. As the Attorney General, yes. And why is that? Because, again, as we were saying, it's – it was raised below we've accepted it as true for purposes of this – of this appeal. We can't have it both ways. You can't say it's not raised in the case because it's not in the complaint and then say, yes, it is raised for purposes of claim preclusion. Either you tell us, don't worry about it. It's not in this case. Affirm as it stands and that's a different case for a different day. Or you say the claim is now before us and we have to rule on it because we, the state, are entitled to claim preclusion on the – so it's either raised or it's not raised. You can't have it both ways. So which – which are you going to now – which position are you now going to take? Again, as – as the Attorney General, as I mentioned earlier, we accept that allegation is true for purposes of this – this appeal. So we have to rule on it if it were true. Yes. Well, I take it your position is that if it was a four- to six-hour time period taken, it's not because of what the Attorney General has done. You're saying that's the responsibility of local law enforcement. That's correct, Judge Clifton. And your position is that the form that's submitted – I've forgotten, it's a two- or three-page form – is something that the Attorney General is responsible for. And the requirement that the registration be in person as opposed to online or some other way is something the Attorney General is for. But a process that requires several hours to complete that form is something the Attorney General is not responsible for. That falls on local law enforcement. That's correct. And we'd have to rule that the Attorney General is, in fact, not responsible for it, right? We'd have to absolve the Attorney General. I mean, so if, in fact, she were complicit in some way, either by assent or by directive or anything like that, then we'd be absolving the Attorney General of that, right? In order to have this claim precluded. We'd have to say whatever the Attorney General did, whatever her involvement is in this delay process, she's home free and clear, right? Well, again, I don't know. Essentially, yes. But, again, we don't have any allegations that anything the Attorney General is doing is causing these delays. The form is very straightforward. It's two pages. It shouldn't take more than an hour, hour and a half to fill out, max. And so there's simply nothing that the Attorney General is doing here to impose or create the type of wait time that we're discussing. So it's not just someone's 10 minutes. It's an hour, an hour and a half. Our position is we don't think it should take any longer than an hour to an hour and a half. What information is requested on the form? Is his name, address, his employer's name and address? What else is on the form? His identifying marks, tattoos, his car information. Are there essay questions or anything like that? No, no. And, again, the Court can see the form. The excerpt of the record is at 29 and 30, and it's a short form. The first page requires information to be filled in, the address, information along what type of registration or update is taking place. And the second page is a series of acknowledgments by the offender about what his responsibilities and obligations are. So why would that take an hour? Yeah. Again, we think it should take no more than that. Indeed, it should probably take some. There might be a crowd at the police station that might be shorthanded, or there might be any number of reasons why they make him wait, just like if you go to the motor vehicle division. Yes. But is there any reason why the form shouldn't take but a few minutes to fill out? No. And yet you want us to say it's okay for an hour, hour and a half. Okay. We don't think, as Judge Silverman was saying, when you go to a government office, sometimes things take time, waiting in line, having people fill things out. Well, at the DMV you make an appointment, you know, and you get there, bam, you're out. Other people may wait, but you make an appointment. There's no possibility of making an appointment here, right? Some jurisdictions do. But in any event, is there anything about this form that, barring the wait and that whole question, that would take any more than what appears on its face to be a few minutes' worth of filling out? No, Your Honor. Didn't the district judge specifically exempt any as-applied claims from the ruling? Am I remembering that correctly? He declined to exercise supplemental jurisdiction over any potential State law claims. But I'm not sure that he ---- I thought he also carved out any as-applied substantive due process claims. I don't believe he did, Your Honor. Okay. So you think as-applied substantive due process claims are covered? So if we were to affirm, we'd be affirming the as-applied substantive due process claim as well, in your view? Yes. With all the collateral estoppel, I guess, claim preclusion. I learned collateral estoppel in law school, so I'm still stuck in that universe. But with all the collateral, all the estoppel effects. Residual effects, yes. Yeah, that one too. Okay. Thank you.  You may have a minute for rebuttal, if you wish. Thank you, Your Honors. A few points on rebuttal. First of all, Mr. Littman does have a claim against the Attorney General here. The only written guidance provided to local police stations about how to conduct these registration visits is the registration form on page 29 and 30. However, Mr. Littman has alleged on the record on page 42 that they're conducting warrant checks, background checks, and keeping them waiting as long as 10 hours. Where there is ---- His local law enforcement. So isn't that proper defendant if it's a claim that is taking too long? No, Your Honor, because the Attorney General has an obligation to provide better guidance to local law enforcement. Now, what's the source of that legal obligation? Void for vagueness, Your Honor. What's vague about fill out this form? Now, how the police department does it, the police department may do it incorrectly. They may do it in a way that takes up somebody's time unnecessarily. I'm sure the Attorney General has got the obligation to tell people what they should know in the first place. Yes, Your Honor. There is also a State law obligation under the California APA to put these requirements in writing, which the Attorney General has not done so. Now, you cite to ER 42, I think it's 42 to 43. Okay.  That is a transcript of a proceeding. No. Okay. And the normal way we do things in Federal court is if you want a claim, you put it in a complaint. This has never been put in a complaint. I mean, why is it before us at all? Your Honor, we're asking for a liberal reading of the complaint, given that this was pro se at the district court level. To the extent that the actual complaint doesn't encompass these allegations, Mr. Lippman should be given the opportunity to amend his complaint. Did he seek leave to amend from the district court? He did, Your Honor. However, I believe they did not give him further leave to amend because they found that it was implausible. They? They, Judge Chen, Your Honor, found it implausible that. I will tell him that he's referred to in the plural like royalty. I think he'll be pleased by that. Do you have any further questions, Your Honor? Well, I do want to understand. So this hearing where he raises the claim to 4 to 10 hours. Yes, Your Honor. Was he given leave to amend the complaint after this hearing or not? Your Honor, if I may. That's what he's there for. I must say, I thought the district judge was quite patient in this case and quite generous with, you know, I think many district judges might not be as patient or generous. So I'm still surprised when you say that he. Your Honor, his first complaint alleged due process. Just answer my question. After he raises his claim, he puts it sort of out there. Was he given leave to amend the complaint? He was only given leave to amend his equal protection claim. So he wasn't given the opportunity to amend his complaint to add these details. Did he seek opportunity? I don't believe so, Your Honor. Okay. Thank you. Thank you. Okay. Case just argued. We'll stand a minute.
judges: KOZINSKI, SILVERMAN, CLIFTON